UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| DEDRA JOHNSON, et al. | ) | |
| | ) | Civil Case No. |
| Plaintiffs, | ) | 12-cv-67-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| LOCKHEED MARTIN CORPORATION, | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER** |
| Defendant. | ) | |
| | ) | |
| | ) | |

\* \* \*

This matter is before the Court on Defendant Lockheed
Martin Corporation's ("Lockheed Martin") Motion for Summary
Judgment [DE 42]. Plaintiffs have filed a Response [DE 49],
stating their objections to the Motion, and Defendant has filed
a Reply [DE 57] in further support of its Motion. The Motion is
ripe for resolution and, for the reasons stated below, shall be
granted.

**I.   JURISDICTION**

As an initial matter, the Court considers whether it has
jurisdiction with respect to the claims of each Plaintiff. This
action was filed on March 5, 2012, as a *qui tam* action, averring
violations of the False Claims Act, 31 U.S.C. § 3729, *et seq*.
The Complaint also averred violations of the Kentucky Civil

Rights Act, KRS 344.040. At that time, the Court had original jurisdiction over the federal claim, *see* 28 U.S.C. § 1331, and supplemental jurisdiction over the claims averred by Plaintiffs under state law, *see* 28 U.S.C. § 1367. [*See also* DE 1, Complaint at ¶¶ 7-8.] The False Claims Act claims were eventually dismissed, leaving only the state law claims, until such time as Plaintiffs filed an amended complaint, which included a claim for relief by Plaintiff Stakelin under the federal Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*

While this Court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3), it has not exercised its discretion to do so in this instance. Jurisdiction was and is proper in light of 28 U.S.C. § 1331 with respect to the federal claims and is proper in light of 28 U.S.C. § 1367 with respect to the state law claims. It has been so since the commencement of this case, and the Court may properly consider Plaintiffs' claims.

## II. FACTUAL BACKGROUND

In 2010, Lockheed Martin was awarded a contract with the United States Special Operations Command to provide services for Special Operations Forces Support Activity (a contract referred to by the parties as the "SOFSA contract"), which is a broad-ranging contract covering many types of services, anything from a "task order to repair a weapon, something small, to a $50 million or two $25 million task orders to build an MH-60 helicopter." Lockheed Martin subcontracted some of the work to be performed under the contract to other entities. DS2 was one of the entities that received a subcontract. The plaintiffs were employees of DS2 during the period of the subcontract between DS2 and Lockheed Martin.

DS2 employees reported directly to DS2 managers, but there was also a Lockheed Martin supervisor and/or Team Lead who worked in each area to ensure that work orders were completed in conformance with the production schedule and the customer's expectations. Lockheed Martin supervisors and/or Team Leads did not have the power to hire, fire, or discipline DS2 employees, but they were familiar with the skills and job performance of the DS2 employees, based on their observation of and interaction with the DS2 employees. Plaintiffs explain that DS2 managers

were not subject matter experts with the skill set to provide direction or evaluate the performance of their employees – rather that was done by Lockheed managers. Plaintiffs contend that Lockheed managers were, in fact, the ones who conducted skills assessments for DS2 employees.

Fairly soon after the DS2 subcontract went into effect in September 2010, Lockheed Martin began receiving complaints from its Special Forces customer regarding the rates being charged for the work performed by DS2. Ultimately, Lockheed Martin deciding not to exercise any of the future options under the DS2 subcontract, and to hire persons to be employed by Lockheed Martin to perform the work on the contract which was being performed by DS2.

Lockheed Martin also decided that it could perform that work with fewer employees than had been used by DS2.[1] Specifically, while DS2 employed a little over 500 individuals to perform work on the SOFSA contract in Central Kentucky, Lockheed Martin planned to hire only about 400 individuals to do the same work. The decision not to extend the subcontract with

_____

[1] Plaintiff disputes whether Defendant was actually able to do this work with fewer people, in light of the fact that 185 hourly employees were hired in the fourteen months following the DS2 transition. The wisdom of Defendant's initial decision to hire fewer people is not, however, material to the dispute before the Court at this time.

DS2 and to use fewer employees than DS2 had been using required that Lockheed Martin solicit applications and hire approximately 400 employees within a very short period of time, beginning around August 8, 2011 and ending on September 5, 2011. Lockheed Martin accomplished this by posting just over 400 positions on its website, www.lockheedmartin.com/careers, on or about August 8, 2011, and advising interested DS2 employees of the open positions and how to apply.

DS2 employees were told that to be considered for a position by Lockheed Martin they would need to submit an application, but that they could apply for as many positions as they felt qualified to perform. The required application form did not seek information regarding the applicant's age.[2] Because the job openings were posted on Lockheed Martin's public website, persons other than DS2 employees were also able to apply, and Lockheed Martin received many thousands of applications for the approximately 400 jobs to be filled. Lockheed Martin, however, did not consider or interview any

---

[2] Plaintiffs state that, while the application did not require them to reveal their age, hiring managers knew, more or less, how old they were because they had worked with or managed Plaintiffs for a number of years before the transition. This may be the case but, ultimately, it is not material to the resolution of this matter as it comes to the Court today.

applicant who was not employed with DS2 and working on the SOFSA contract during this time.

Because Lockheed Martin was planning to hire only about 400 of the just over 500 DS2 employees in Central Kentucky, the next step in the process was for each hiring manager or supervisor to select which applicants to interview for their open jobs. "Skills assessment" matrixes were prepared by Lockheed Martin supervisors and team leads regarding the DS2 employees in their work areas to determine which applicants to interview.[3] These skills assessments were used by Lockheed Martin in deciding which applicants would be interviewed.[4]

Interviews were conducted by a panel of Lockheed Martin employees, including the hiring manager or supervisor and at least one representative from Human Resources, and to promote consistency, the same five questions were asked during each interview and a multi-page form was completed to reflect the

---

[3] Plaintiffs point out that the skills assessments may have been completed prior to the announcement that DS2 transition would take place and without resumes to assist managers of the skill set of the applicant. This "dispute" is not as to a fact material to the resolution of the matter, as it stands before this Court, and need not be considered further.

[4] Plaintiffs dispute the validity of the skills assessments as a true reflection of their skills and that the scores obtained on the assessments were known to be inaccurate. They contend that Stakelin and Prather received artificially low scores on their assessments. Again, the qualifications of the Plaintiffs for the positions for which they applied is not material to the Court's decision today.

interview panel's score/points for each interview. Following that process, Lockheed Martin made job offers to the interviewees who scored the highest on a combination of the skills assessment, workmanship, and interview, although Plaintiffs point to individuals who were interviewed or hired that received lower assessments than Plaintiffs Walker and Johnson.

Plaintiffs Stakelin and Walker were not selected for interviews because, Defendant explains, their skill assessments were too low to place them in competition for the positions for which they had applied relative to other DS2 employees who had applied for the same positions. Defendant contends that Plaintiff Johnson was not selected for an interview based on a combination of her skills assessment score and because she had a number of write ups for poor work product. Finally, while Plaintiffs Prather and Thompson received interviews, they were not offered positions by Lockheed Martin based on their combined scores for their skills, workmanship, and interview responses.

By contrast, Johnson, Stakelin, Walker, Prather, and Thompson claim that they were not hired by Lockheed Martin during the DS2 transition due to their ages. At the time that Lockheed Martin was selecting which of the DS2 employees it

would hire, Johnson was age 53, Stakelin was age 54, Walker was age 60, Prather was age 53, and Thompson was age 60. Plaintiffs had all held their prior positions for a number of years, some for as many as 25 years.

They base their claim, in part, on the fact that shortly after initial lay off of DS2 employees and the transition from DS2 to Lockheed, a former DS2 employee and by-then employee of Defendant, Sandy Stamper, confronted Defendant's Vice President of Special Operations Forces, Contractor Logistics Support Services ("SOF-CLSS"), in charge of the SOFSA Contract, General Howard Yellen, about the fact that many longer tenured, older employees were passed over in favor of younger employees. In response, General Yellen stated simply that "older workers get complacent" and that "people get slower when they get older." General Yellen was not, however, a decision-maker with respect to the hiring decisions with respect to the plaintiffs or other former DS2 employees; specifically, he did not participate in the hiring interviews and had no direct role in the hiring process.

At the time that Lockheed Martin announced it would be discontinuing its subcontract with DS2 and hiring its own workforce, plaintiff Johnson held the position of Exhibits

Specialist II in the Finishing Shop with DS2. The Lockheed Martin supervisor who oversaw Johnson during the subcontract with DS2 was Jerry Booth. Booth had been the supervisor or Team Lead over the Finishing Shop, and over Johnson, since he was first hired in 2007 by L-3 Communications, Lockheed Martin's predecessor on the SOFSA contract.

During the subcontract with DS2, there were approximately four Exhibits Specialist III's in the Finishing Shop, along with three Exhibits Specialist II's, three Exhibits Specialist I's, and five Maintenance Trades Helpers. Lockheed Martin decided to hire only one Exhibits Specialist I, three Exhibits Specialist III's, no Exhibits Specialist II's, and three Maintenance Trades Helpers in the Finishing Shop at the time of the DS2 transition.

The then-current Exhibits Specialist II's were told that they could apply for any and all positions that they felt qualified to perform. Johnson applied for only two positions – (1) Exhibits Specialist III (which was one level up from her then-current position); and (2) Maintenance Trades Helper. Johnson was not selected by Booth to interview for either position because of her score on the skills assessment relative to the scores of the other DS2 applicants and because she had a significant number of recent write ups for non-conforming work

product. Of the three DS2 applicants hired for the position of Exhibits Specialist III, one was actually older than Johnson -- Gary Adams, who was age 54. All three Exhibit Specialist III's who were hired also had higher skills assessment scores than Johnson. Of the three DS2 applicants hired for the position of Maintenance Trades Helper in Jerry Booth's area, all three were Maintenance Trades Helpers in the Finishing Shop at the time of the DS2 transition, and one of the three was older than Johnson; specifically, Jackie Shuler, who was born in 1957, whereas Johnson was born in 1958.

In addition, one of the other two DS2 applicants hired in Booth's area for the position of Maintenance Trades Helper was age 49 when hired – only about four years younger than Johnson. All three DS2 applicants hired as Maintenance Trades Helpers had higher skills assessment scores in the Bag/Tag category than Johnson, which was the only category applicable to the position of Maintenance Trades Helper.

At the time of the DS2 transition, plaintiff Stakelin held the position of NC Machine Operator II. He was then 54 years old. The Lockheed Martin supervisor, or Team Lead, assigned to Stakelin's area during the subcontract between Lockheed Martin and DS2 was Sean Wallace. Wallace had been Stakelin's immediate

supervisor since Wallace was first hired in 2007 by L-3 Communications, again DS2 and Lockheed Martin's predecessor on the SOFSA contract.

Prior to the announcement that Lockheed Martin would not be renewing its subcontract with DS2 (specifically, in late 2010 and early 2011), there had been a decline in the amount of work in the area where Stakelin worked. Stakelin and other DS2 employees were concerned about DS2 laying-off employees as it was obvious there simply was not enough work to be done. Stakelin assumed that Lockheed Martin would not be hiring all of the DS2 employees. During the DS2 transition, Stakelin applied for the position of NC Machine Operator II in Sean Wallace/Robbie Adams' area.

Stakelin was not interviewed for the NC Machine Operator II because of his low score on the skills assessment compared to others who had also applied and he lacked "versatility" on the various machines in the shop. Adams, the supervisor over the Machine Shop since June 2006, had only ever seen Stakelin operate one machine in the entire shop. The skills assessments scores for the Machine Shop employees, including Stakelin and Prather, were not simply totaled across the board; rather, Adams and Wallace grouped scores for each machine into the "work

center families" previously identified by management and then totaled each employee's assessments/scores for each work center family.

Lockheed Martin hired 20 of the DS2 employees from Stakelin's area in the Machine Shop. One of those individuals, Don Coffey, was older than Stakelin. [Id., pp 21-22] Specifically, Coffey was age 64 at the time he was hired by Lockheed Martin, whereas Stakelin was only age 54 at the time; also, three of the twelve employees hired for the NC Machine Operator II position were age 40 or older. [Birthday Spreadsheet, Exhibit 4] No one at Lockheed Martin ever said anything to Stakelin to cause him to believe that Lockheed Martin was biased against older workers, or that age played a role in Lockheed Martin's hiring decisions during the DS2 transition.

In August 2011, Plaintiff Walker held the position of Electronics Technician I in the DS2 Cable Fab Shop, and was then age 60. The Lockheed Martin supervisors and team leads assigned to Walker's area were Jim Thomas and Kevin Parker. Thomas had been a supervisor on the SOFSA contract since around 1987, and had been the supervisor of the Cable Fab Shop since about 2008. Prior to the transition in September 2011, DS2 employed

approximately sixty individuals as Electronics Technician I's in the Cable Fab Shop. Due to a significantly reduced workload, Lockheed Martin hired only thirty-two of the DS2 employees who had applied for that position in the Cable Fab Shop – a reduction of nearly half.

Walker only applied for the position of Electronics Technician I. Walker was not selected for an interview by Jim Thomas because of her low score on her skills assessment relative to other DS2 employees who had applied. Of the thirty-two DS2 applicants hired by Jim Thomas for the position of Electronics Technician I in the Cable Fab Shop, five were older than Walker (Mila Land, Brenda Adams, Christian Gary, Sandra Stamper, and Patricia McQuinn) and eleven were less than six years younger than Walker.

Walker never heard or saw anything that made her think that Lockheed Martin was biased against older workers, and no one at Lockheed Martin ever mentioned age was a factor in hiring decisions. Many of the persons hired for the position Walker sought got jobs because they had special training, had military backgrounds, or were simply good at their jobs.

In August 2011, plaintiff Prather held the position of NC Machine Operator II with DS2. Prather was then 53 years old. The Lockheed Martin supervisor or Team Lead assigned to Prather's area during the subcontract between Lockheed Martin and DS2 was Sean Wallace. Wallace had been the supervisor or Team Lead over the machining department since Wallace was hired in 2007 by L-3 Communications, Lockheed Martin's predecessor on the SOFSA contract. Prather knew that Lockheed Martin was going to be hiring fewer employees to do the work than were currently employed by DS2.

During the DS2 transition, Prather applied for several positions, including NC Machine Operator II and NC Machine Operator I. Prather was not interviewed for the NC Machine Operator I or II positions because of his score on the skills assessment compared to others who had also applied for those positions. Persons in Prather's area were selected for interviews, or not, based on their score in a work center family of machines, rather than a total score on all machines.

Prather was interviewed by Lockheed Martin for both the Sheet Metal Worker and Maintenance Trades Helper positions on August 22, 2011. He was interviewed by three Lockheed Martin managers – Donna McClure, Robbie Davis, and Barbara Jacobs, and

they gave Prather a score of 12 points out of a possible 15 for his answers to the five interview questions. Prather received the following scores: 42.1% for Sheet Metal Worker; 57.5% for Maintenance Trades Helper (Finishing Shop); and 70.0% for Maintenance Trades Helper ("LBUR" or "Deburr").

The DS2 applicants hired for these positions had higher percentage scores than Prather; specifically, the lowest applicant score for a Sheet Metal Worker who was hired was 45.61%; and the lowest applicant score hired for a Maintenance Trades Helper in Finishing was 78.7%. The lowest applicant score for a Maintenance Trades Helper hired in Deburr was 86.6% .

Lockheed Martin hired at least one individual from Prather's area as an NC Machine Operator, Don Coffey, who was older than Prather. Coffey was age 64 at the time he was hired by Lockheed Martin, whereas Prather was only age 53 at the time. Michael Maze, one of the individuals hired as a Sheet Metal Worker during the DS2 transition was the same age as Prather. Oran Gilvin was also hired as a Sheet Metal Worker, and he was age 50 at the time he was hired – only three years younger than Prather. Finally, one of the five individuals hired as a Maintenance Trades Helper, Jackie Shuler, was a year older than Prather, and two others, Stephen Robinson (age 51), and Billy

Hibbard (age 49), were, respectively, only two and four years younger than Prather.

Prather never heard anything from Lockheed Martin that made him think age had anything to do with him not getting hired.

In August 2011, plaintiff Thompson held the position of Aircraft Mechanic III in the "back shop" in Richmond, Kentucky. He was then age 60. The Lockheed Martin supervisor assigned to Thompson's area during the subcontract between DS2 and Lockheed Martin was Ed Kloeppel. At the time of the DS2 transition, Lockheed Martin decided to not have Aircraft Mechanic III's located in Richmond, which meant that Thompson would have to relocate to Avon if he wanted to remain as an Aircraft Mechanic III, or apply for a position as an Aircraft Mechanic II and be supervised by Bill Miller. Thompson did not want to work for Bill Miller due to "personality conflicts" and decided not to apply for anything other than an Aircraft Mechanic III position in Damon Evans' area in Avon. Thompson told Lockheed Manager Donna McClure he would rather take his chances with Damon Evans than work for Bill Miller.

Thompson received thirty-four out of a possible thirty-nine total points on his skills assessment and was selected by Damon

Evans to interview for the Aircraft Mechanic III position. Damon Evans and Brittany Streitzel interviewed Thompson on August 22, 2011. Thompson came across during his interview as disinterested and acted as if he should not have to sit for an interview in order to be hired for a position. Thompson received a score of only six points out of a possible 15 for his answers to the five interview questions. Thompson's total score regarding skills assessment, workmanship, and interview responses was 85%.

Damon Evans of Lockheed Martin did not hire an Aircraft Mechanic III with a score lower than 90%. Evans hired at least one individual for an Aircraft Mechanic III position who was older than Thompson; specifically, James Mosbey, who was age 64.[5] No one at Lockheed Martin ever made a statement to Thompson that caused him to think that Lockheed Martin was biased against older workers.

Ultimately, Lockheed Martin hired 387 of the DS2 employees who applied for positions during the DS2 transition in September of 2011. Of the 387 former DS2 employees who were hired by Lockheed Martin at that time, 172 were age 40 or over, 106 were

---

[5] Evans also hired individuals for other positions in his area who were older than Thompson, including, for example, Robert Cavasos, who was age 69, and Allan (Dale) Lowe, who was age 62.

age 47 or over, 75 were age 50 or over, and 52 were age 54 or older.

### III. STANDARD OF REVIEW

Summary judgment should be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Johnson v. United States Postal Serv.*, 64 F.3d 233, 236 (6th Cir. 1995). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to come forward with evidence showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A mere scintilla of evidence is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252. This standard requires a court to make a preliminary assessment of the evidence, in order to decide whether the non-moving party's evidence concerns a material issue and is more than *de minimis*. *Hansel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996). The mere "possibility" of a factual dispute is not enough. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

## IV. DISCUSSION

All plaintiffs seek relief for age discrimination under the Kentucky Civil Rights Act, KRS 344, et seq., and Plaintiff Stakelin seeks relief under the Age Discrimination in Employment Act (ADEA), 28 U.S.C. § 621, et seq., both of which prohibit an employer from discharging or refusing to hire older employees on the basis of their age. *See* 29 U.S.C. § 623; KRS 344.040. Claims brought under the KCRA are "analyzed in the same manner" as ADEA claims. *Williams v. Tyco Elec. Corp.*, 161 Fed. App'x 526, 531 & n. 3 (6th Cir. 2006) (citing *Ky. Center for the Arts v. Handley*, 827 S.W.2d 697, 699 (Ky Ct. App. 1991)); *Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky. 1984) (citing *Ky. Com'n on Human Rights v. Commonwealth of Ky., Dept. of Justice*, 586 S.W.2d 270 (Ky. Ct. App. 1979)) (explaining that because "[t]he Kentucky age discrimination statute is specially modeled after the Federal law ...., in this particular area we must consider the way the Federal act has been interpreted," and applying federal caselaw to the plaintiff's KCRA claim).

A party may establish a claim of age discrimination by offering either direct or circumstantial evidence of age discrimination. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). Direct evidence of discrimination is "that

evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (citing *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1248 (6th Cir. 1995); *Harrison v. Olde Fin. Corp.*, 572 N.W.2d 679, 684 (Mich. Ct. App. 1997)). Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred. *Kline*, 128 F.3d at 348 (citing *Talley*, 61 F.3d at 1248).

The Court addresses, as a threshold matter, whether General Yellen's alleged comment, that "older workers get complacent" and "get slower when they get older," constitutes direct evidence of age discrimination. Plaintiffs contend that, in this matter, General Yellen's statements concerning older works are direct evidence of age-related animus because they are a corporate decision maker's express statement of desire to remove employees in a protected class and, thus, bear squarely on the contested employment decision. The Court disagrees, because the only evidence of record demonstrates that General Yellen was never a decision-maker with respect to hiring for the relevant

individuals in this matter, either plaintiffs or any other former DS2 employees; that he never participated in hiring interviews; and that he had no role whatsoever in the hiring process. As such, his statements cannot constitute direct evidence of age-related animus on the part of Defendant with respect to hiring. *See Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 549-50 (6th Cir. 2004) (holding that age-biased statements by president and vice-president of employer as well as plaintiff's immediate supervisor could not constitute direct evidence and were irrelevant because those three individuals were not involved in decision to terminate plaintiff); *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 710 (Ky. App. 2004) (holding that supervisor's biased statements did not constitute direct evidence because supervisor had no role in employment decisions at issue).

In assessing ADEA age discrimination claims, where there is no direct evidence of age discrimination, this Court applies the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), which requires a plaintiff to establish a prima facie case by demonstrating that (1) he was a member of the protected class, meaning he was at least 40 years old; (2) he was subjected to an adverse employment action; (3) he was

qualified for the position; and (4) the successful applicant was substantially younger than the plaintiff.[6]  *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998) (citing *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir. 1998); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir. 1982) (citing *Marshall v. Goodyear Tire and Rubber Co.*, 554 F.2d 730, 735 (5th Cir. 1977)).

While age differences of ten years or more have generally been held to establish the "substantially younger" element of the *McDonnell Douglas* test, age differences of ten years or less have not. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336-39 (6th Cir. 2003). Though the Sixth Circuit has declined to create a bright-line rule for "substantially younger," it has held that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Id*. at 340.

It is not enough that each of the plaintiffs was at least 40 years old and, thus, a member of the protected class, or that

_____

[6] After a plaintiff establishes a prima facie case, the burden shifting framework of McDonnell Douglas is applied.  *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998).  The Court concludes, as explained elsewhere in this Memorandum Opinion and Order, that Plaintiffs cannot make a prima facie case and does not reach this stage of the analysis.

they were not hired by Defendant, i.e., subjected to an adverse employment action.[7] It is undisputed that there were successful applicants for each position for which the plaintiffs applied that were not substantially younger than the plaintiffs and, in some instances, there were successful applicants for each position that were older than the plaintiffs.[8] Thus, Plaintiffs' claims fail as they cannot make their prima facie case. *See, e.g, Holtzclaw v. McCullough*, No. Civ. A 404-cv-81-M, 2005 WL 1653587 at *3 (W.D.Ky. July 12, 2005) (holding that 54-year-old plaintiff who was not hired but was qualified for position failed to establish prima facie case of age discrimination because he could not show that all 15 candidates who were hired were substantially younger than him).

In the instant matter, there is no direct evidence that Defendant considered age to be significant in its hiring

---

[7] The Court need not decide whether the facts demonstrate that each plaintiff was qualified for the position or positions for which he or she applied and declines to do so.

[8] Plaintiffs encourage the Court to evaluate this situation as a reduction in force and urge the Court to place more significance on the fact that more workers outside of the protected class were hired than workers in the protected class. The Court is not persuaded, in light of the application and evaluation process and the fact that Defendant was a wholly new corporate entity, distinct from DS2, hiring its own workforce (albeit, from a familiar pool), that these facts are particularly relevant to its inquiry today.

process.[9] There is no evidence that the requirements for hiring were age specific, the application did not request the disclosure of the birthday or their age, and there is no evidence that interviewers knew the specific age of each applicant or inquired into it during interviews, for example. It is true that most individuals hired by Defendant as part of the DS2 transition were "substantially younger" than the Plaintiffs and that some of those making decisions about hiring may have known the relative age of Plaintiffs due to their long-standing working relationships. But there was at least one worker who was hired who was older or at least not substantially younger than Plaintiffs in each position for which Plaintiffs applied, whether in the area most akin to that in which they had been employed previously at DS2, by virtue of supervisor and task, or a new area in which they sought employment. This negates the inference that age was a factor in the selection process.

---

[9] The Court has already explained that General Yellen's statements concerning older workers are irrelevant to its analysis. Plaintiffs also reference a statement issued by L-3 Communications, not Lockheed Martin, in which L-3 Communications management encouraged its managers to "attract young talent to replace our aging workforce." Plaintiffs argue, with no citation to the record, that this statement was delivered to and received by managers retained by Lockheed and who were involved in the hiring process in question here. Considering the age of the rank hearsay statement and the fact that it was issued by management of a different corporate entity, it is not relevant to the issues before this Court.

Plaintiff Johnson, age 53, applied for two positions: Exhibits Specialist III and Maintenance Trades Helper. Of the people hired to fill the Exhibits Specialist III position, one was age 54, older than Plaintiff Johnson. Of the applicants hired for the position of Maintenance Trades Helper, one of the three was born the year before Johnson and was, thus, older. Two other applicants hired for the position of Maintenance Trades Helper were age 49 – only about four years younger than Johnson.

Plaintiff Stakelin, age 54, applied for the position of NC Machine Operator II. Of the 20 applicants hired by Defendant for this position, one of those individuals was 64 years old and, thus, older than Stakelin. Plaintiff Walker, age 60, applied for the position of Electronics Technician I, a position that was filled by at least five individuals who were older than Walker and eleven individuals who were less than six years younger than Walker. Plaintiff Thompson, age 60, applied for the Aircraft Mechanic III position in Damon Evans' area in Avon, Kentucky, at the time of the transition. At least one individual hired in that position was age 64 and, thus, older than Thompson.

Plaintiff Prather, age 53, applied for several positions, including NC Machine Operator II, NC Machine Operator I, Sheet Metal Worker, and Maintenance Trades Helper positions. Lockheed Martin hired at least one individual from Prather's area as an NC Machine Operator I who was 64 and, thus, older than Prather, although all twelve individuals hired in the position of NC Machine Operator II were under 60 and, according to Plaintiff, "substantially younger" than Stakelin. Another individual hired as a Sheet Metal Worker was the same age as Prather and, yet another, was only three year youngers than Prather. Finally, one of the five individuals hired as a Maintenance Trades Helper was a year older than Prather, and two others were only two and four years younger than Prather.

Thus, in the absence of direct evidence of age-related animus in the hiring process or circumstantial evidence which establishes a prima facie case of violation of the ADEA or the KCRA, Plaintiffs'' claims against Defendant fail and must be dismissed. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *Bush*, 161 F.3d at 368; *Ackerman*, 670 F.2d at 69.

Accordingly, **IT IS ORDERED** that Defendant Lockheed Martin Corporation's ("Lockheed") Motion for Summary Judgment [DE 42] is **GRANTED.**

This the 1st day of May, 2014.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge